UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
 JOHN VASSOS,                               :

                                 :

               Plaintiff,     :

                                 :    **MEMORANDUM DECISION AND**

       - against -          :    **ORDER**

                                 :

 JPMORGAN CHASE BANK, N.A.,    :    24-cv-8248 (BMC)

                                 :

              Defendant.    :
-------------------------------------------------------- X

**COGAN**, District Judge.

      This case arises from defendant's closure of plaintiff's bank account and labeling of plaintiff as having committed fraud, preventing plaintiff from opening new accounts at other banks and obtaining a mortgage or home equity line of credit.

      The issue before the Court is whether plaintiff must resolve his claims against defendant in arbitration as opposed to in this Court. I conclude that he must. The Deposit Account Agreement ("DAA") between the parties contains an arbitration clause that covers all claims related to the agreement itself, plaintiff's account, transactions involving his account, and any other related services or agreements. Because plaintiff's claims arise from these sources, defendants' motion to compel arbitration is granted.

## BACKGROUND

      Plaintiff held a checking account with defendant for approximately eight years until defendant notified plaintiff that it was closing his account due to "unexpected activity." Despite this notice, defendant continued to process transactions through plaintiff's account, leading defendant to accuse plaintiff of "acting wrongfully by continuing to process transactions through the purportedly closed Account." At defendant's direction, plaintiff withdrew his remaining

balance from the account.  However, defendant continued to process payments through plaintiff's account, causing plaintiff to accrue overdraft fees.  Plaintiff paid these overdraft fees.

In addition to closing plaintiff's account, defendant reported plaintiff for fraud.  Plaintiff learned of this "fraud" label through a written report from Early Warning Services, a nationwide consumer reporting agency.  The report stated that plaintiff had committed "Checking Account Fraud," although the date listed for the fraud was two months after defendant alleged that it was closing plaintiff's account.  Plaintiff complained about and disputed this charge with defendant and Early Warning Services, but received no substantive response from defendant.

After plaintiff withdrew his funds from his account with defendant and paid the overdraft fees, plaintiff attempted to open a new checking account at Wells Fargo and then TD Bank. Both banks refused to open accounts for plaintiff "or otherwise do business with him."  A Wells Fargo representative told plaintiff that "he was virtually blacklisted at all national banks by virtue of the 'Checking Account Fraud' label."  Plaintiff was also unable to obtain a mortgage and a home equity line of credit due to defendant's fraud allegation.

When plaintiff opened a checking account with defendant, he signed a Personal Signature Card, stating, in part, "I acknowledge receipt of the Bank's Deposit Account Agreement . . . and agree to be bound by the terms and conditions contained therein as amended from time to time." The DAA's arbitration clause, which defendant now seeks to enforce, provides that:

> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, and any related service or agreement with us are subject to arbitration.  Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the denial, approval or establishment of your account are included.  Claims or disputes are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies.  Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future.

Plaintiff sued defendant in state court in August 2024 but did not serve defendant with the complaint until November 8, 2024.  Defendant removed the case to this Court on November 27, 2024.  Since then, the parties have appeared before this Court at an initial status conference, submitted a proposed discovery schedule, begun exchanging discovery, and defendant has answered plaintiff's complaint.  Defendant brought this motion to compel arbitration and stay this action during the pendency of arbitration on February 7, 2025.

## LEGAL STANDARD

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment."  Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted).  A court "consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)), and "draw[s] all reasonable inferences in favor of the non-moving party," Nicosia v. Amazon.com, 834 F.3d 220, 229 (2d Cir. 2016).

The party seeking to compel arbitration "must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'"  Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (cleaned up).  Once the moving party establishes a *prima facie* showing that an agreement existed, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."  Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010).

Courts consider four factors to determine whether to compel arbitration: "(1) whether the parties agreed to arbitrate; (2) the scope [of] the arbitration agreement; (3) whether, if federal

statutory claims are asserted, Congress intended those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed pending arbitration." McAllister v. Conn. Renaissance Inc., 496 F. App'x 104, 106 (2d Cir. 2012) (citing JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004)).

The threshold issue is "whether the parties have indeed agreed to arbitrate." Doctor's Assocs., Inc. v. Alemayehu, 934 F.3d 245, 250 (2d Cir. 2019) (citation omitted).  Courts resolve this issue by looking to state law.  See Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002); see also Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012).[1]  Like other contracts, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (citation omitted).

## DISCUSSION

Plaintiff has not asserted any federal statutory claims, so this Court will consider whether the parties agreed to arbitrate, the scope of the arbitration agreement, plaintiff's asserted defense against arbitrability – that defendant waived its right to invoke arbitration, and whether the case should be stayed pending arbitration.

## I.    Agreement to Arbitrate

"Under general contract principles a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 845 (2d Cir. 1987).  "In the context of evaluating whether 'special circumstances' sufficient to warrant relief from an arbitration agreement exist, 'the party resisting arbitration bears the burden of proving that the claims at

---

[1] Neither party asserts that any law other than that of New York should apply to this issue.

issue are unsuitable for arbitration.'" Marciano v. DCH Auto Grp., 14 F. Supp. 3d 322, 328

(S.D.N.Y. 2014) (quoting Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000)).

Although plaintiff asserts that "there is no evidence that [he] had knowledge of, received,

or was presented with the DAA at any time," defendant has produced a "Personal Signature

Card," signed by plaintiff, which states, "I acknowledge receipt of the Bank's Deposit Account

Agreement . . . and agree to be bound by the terms and conditions contained therein."

"Under New York law, 'a party is under an obligation to read a document before he or

she signs it, and a party cannot generally avoid the effect of a document on the ground that he or

she did not read it or know its contents.'" Marciano, 14 F. Supp. 3d at 330 (quoting Brandywine

Pavers, LLC v. Bombard, 108 A.D.3d 1209, 970 N.Y.S.2d 653, 655 (4th Dep't 2013)) (cleaned

up). Moreover, "a signer's duty to read and understand that which it signed is not diminished

merely because the signer was provided with only a signature page." Id. (quoting Dasz, Inc. v.

Meritocracy Ventures, Ltd., 108 A.D.3d 1084, 969 N.Y.S.2d 653, 655 (4th Dep't 2013))

(cleaned up). Thus, plaintiff's assertion that he did not have knowledge of, or was not presented

with, the DAA does not render inapplicable the arbitration clause included therein. "[A] party

who signs a document without any valid excuse for having failed to read it is conclusively bound

by its terms." Id. (quoting Patterson v. Somerset Investors Corp., 96 A.D.3d 817, 946 N.Y.S.2d

217, 218 (2nd Dep't 2012)).

Plaintiff also argues that no agreement to arbitrate exists because the language of the

DAA "virtually invite[s] in-court litigation and may fairly be read to be in conflict with the

arbitration clause." The first sentence plaintiff points to as allegedly in conflict with the

arbitration clause states that "You must file any lawsuit or arbitration against us within two years

after the cause of action arises, unless federal or state law or an applicable agreement provides

for a shorter time." This sentence does not contradict the DAA's arbitration clause or invite in-court litigation: it simply provides that, if a signatory to the DAA wishes to bring an action against defendant in court or in arbitration, he must do so within two years after the cause of action arises. Such a clause does not impact or negate the DAA's provision that "You and we agree that upon the election of either of us, any claims or disputes . . . will be resolved by binding arbitration . . . and not through litigation in any court."

The second sentence plaintiff takes issue with reads: "If you file any lawsuit or other legal proceeding against us that is connected in any way to your accounts or services, you agree to do so in an appropriate court in the state where your account is located." As even plaintiff acknowledges in a footnote, a sentence in the same section clarifies that "If either party chooses to have disputes resolved by arbitration, the section *Arbitration; Resolving Disputes* governs the process and location of the arbitration proceedings." (Emphasis in original.) The requirement that a lawsuit must be filed in an appropriate court does not undermine the other requirement present in the DAA, that either party to the DAA can elect to have claims or disputes resolved in arbitration.

Even when taken together, the DAA's language concerning the time limit to bring actions in court and the appropriate court in which to bring claims *if neither party elects to proceed with arbitration* does not conflict with the DAA's requirement that either party *may* elect to have claims resolved by binding arbitration. Plaintiff points to no provision that invalidates the parties' agreement to arbitrate "upon the election of either of us."

There is no genuine dispute as to whether plaintiff signed the Personal Signature Card that contained an agreement to be bound by the terms and conditions of the DAA, including its arbitration clause. Nor does plaintiff raise any allegations of fraud, duress, or unconscionability

6

as to the DAA's arbitration clause.  Accordingly, this Court finds a valid agreement to arbitrate between the parties.

## II.     Scope of Arbitration Agreement

"In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint. . . .  If the allegations underlying the claims 'touch matters' covered by the parties' [agreement], then those claims must be arbitrated, whatever the legal labels attached to them." Genesco, 815 F.2d at 846 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 624 n.13 (1985)).  Once a court confirms the existence of an enforceable arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983)).

As relevant here, the arbitration clause requires arbitration if requested by either party in "[c]laims or disputes between you and us about your deposit account, transactions involving your deposit account, and any related service or agreement with us" as well as "[a]ny claims or disputes arising from or relating to this agreement . . . or the denial, approval or establishment of your account."  Plaintiff brings six claims for relief against defendant based on defendant's closure of his bank account and defendant's labeling of plaintiff as having committed checking account fraud.  Both of these factual predicates for plaintiff's claims arise from plaintiff's account, transactions, and agreement with defendant.  Defendant's closure of plaintiff's account clearly implicates plaintiff's account itself, which is covered by the arbitration clause.  And

7

defendant's report of fraud against plaintiff arises from transactions involving plaintiff's account, again covered by the arbitration clause.

Plaintiff argues that defendant's "labeling of [plaintiff] as a criminal and disseminating that false charge throughout the banking system" is not covered by the DAA's arbitration clause. However, such labeling, regardless of its propriety, arose from plaintiff's use of his account and transactions conducted into and/or out of the account. Based on plaintiff's use of his account and his agreement with defendant to abide by certain rules in using the account, and, as the DAA provides defendant may do in Section VIII of the agreement, defendant "advise[d] consumer reporting agencies of accounts closed for misuse." Without passing judgment on whether such reporting was accurate or may have violated plaintiff's rights, the Court recognizes that such reporting was done based on the parties' agreement and plaintiff's account and transactions.

Because the scope of the arbitration clause plainly covers the claims at issue here, all of which arise out of or relate to plaintiff's contract with defendant, his account, and/or transactions involving the account, plaintiff's claims are subject to arbitration.

## III.    Waiver by Conduct

Plaintiff argues that even if the case is arbitrable, defendant has waived its right to compel arbitration by doing nothing from the time plaintiff commenced this lawsuit in August 2024 until defendant filed its motion to compel arbitration in February 2025.

Defendant did not raise the possibility of arbitration in state court, where this court was originally commenced; in defendant's removal of the case to this Court; in making its Rule 26 initial disclosures to plaintiff; in defendant's answer to plaintiff's complaint, which included fourteen affirmative defenses; in discussing this case with plaintiff's counsel pursuant to Rule

16; or in the discovery demands defendant served on plaintiff.  In fact, according to plaintiff "[t]he entire case is on track to be wrapped up and trial ready by the end of April."

As the Supreme Court made clear in Morgan v. Sundance, Inc., 596 U.S. 411, 417-18 (2022), "there can be no special arbitration tests that go beyond the requirements of the common law when it comes to a waiver of contractual rights."  Deng v. Frequency Elecs., Inc., 640 F. Supp. 3d 255, 263 (E.D.N.Y. 2022) (citing Morgan, 596 U.S. at 418).  "The most basic requirement of the common law doctrine of contractual waiver is that there must be a knowing and voluntary surrender of a contractual right."  Id.  As the court stated in Herrera v. Manna 2nd Avenue LLC, No. 20-cv-11026, 2022 WL 2819072 (S.D.N.Y. July 18, 2022),

> Waiver requires a clear manifestation of an intent to relinquish [a] known right. Waiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right.  But waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection.  Mere silence, oversight or thoughtlessness in failing to object is insufficient to support an inference of waiver.  While such a waiver may be express or implied, the intent to waive must be clearly established and cannot be inferred from doubtful or equivocal acts or language, and the burden of proof is on the person claiming the waiver of the right.

Deng, 640 F. Supp. 3d at 263-64 (quoting Herrera, 2022 WL 2819072 at *8).  Applying this standard, defendant has not taken or failed to take any action that rises to the level of a clear manifestation of intent to forego arbitration.

Plaintiff alleges that defendant has waived its right to compel arbitration because of the "prolonged period of time . . . during which the issue was not raised;" the facts that defendant did not assert its intention to compel arbitration in its answer and that the parties have exchanged document discovery; and defendant's "duplicitous behavior, [specifically] leading plaintiff 'down a primrose path.'"  Plaintiff likens defendant's conduct to that of the defendants in Deng,

640 F. Supp. 3d 255.  But as plaintiff concedes, this Court found no waiver based on such admittedly similar actions and inactions of defendants in Deng.

First, although plaintiff filed his complaint in state court in August 2024, he did not serve defendant until November 2024.  The "192 day" delay plaintiff complains of is, in reality, closer to three months.  Such a delay, which this Court considers "[m]ere silence, oversight or thoughtlessness" does not rise to the level of "a clear manifestation of intent to relinquish a contractual protection."  Herrera, 2022 WL 2819072, at *8 (quotations omitted); see also Rsch. Frontiers Inc. v. Prelco Inc., No. 18-cv-2939, 2020 WL 6746730, at *5 (E.D.N.Y. Nov. 17, 2020) ("A [contractual] waiver cannot be created by negligence, oversight, or thoughtlessness; instead, it must be proved that a party intentionally or voluntarily waived a contractual right or advantage.") (cleaned up)); De Jesus v. Gregorys Coffee Mgmt., LLC, No. 20-cv-6305, 2022 WL 3097883, at *8 (E.D.N.Y. Aug. 4, 2022) (eight month delay in seeking to compel arbitration did not constitute waiver).

Second, defendant's failure to assert its right to arbitration in its answer and the fact that the parties have exchanged discovery do not constitute a waiver.  The parties have not engaged in "litigation of substantial issues going to the merits of Plaintiff's claims" such that a finding of waiver would be appropriate.  Id. at *9 (finding no waiver where defendant had answered plaintiff's complaint, plaintiff had filed a motion for conditional collective certification, and plaintiff alleged that the parties had "exchanged considerable discovery" before defendant moved to compel arbitration).

Third, accepting plaintiff's contention that defendant has "led plaintiff down a primrose path" of litigating this case in federal court for three months before asserting its right to compel arbitration, as this Court explained in Deng, "that does not constitute the level of activity that

10

would amount to a voluntary waiver of a known right." 640 F. Supp. 3d at 264 (citation and footnote omitted).

Because plaintiff has not shown that defendant clearly manifested its intent to relinquish its right to compel arbitration, this Court does not find a waiver of this right.

**IV.    Stay Pending Arbitration**

Having determined that all of plaintiff's claims are subject to arbitration, I must stay proceedings in this case. See De Jesus, 2022 WL 3097883, at *6.

**CONCLUSION**

Defendant's motion to compel arbitration is granted. The action is stayed pending any final determination of an arbitral tribunal. The stay shall be implemented by administrative closure of the case, and the case will be reopened upon request of any party within 60 days of the final determination of the arbitral tribunal. Plaintiff shall commence the arbitration within 30 days of entry of this decision and advise the Court that he has done so. If he chooses not to commence arbitration, the case will be dismissed.

**SO ORDERED.**

_Brian M. Cogan_
U.S.D.J.

Dated: Brooklyn, New York
     February 24, 2025