UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN VASSOS,

                Petitioner,

      v.

JPMORGAN CHASE BANK, N.A.,

                Respondent.

**MEMORANDUM DECISION AND ORDER**

24-cv-8248 (BMC)

**COGAN**, District Judge.

      Two years ago, petitioner John Vassos ("Vassos") sued respondent JPMorgan Chase Bank, N.A. ("Chase") after Chase reported Vassos for "fraud" relating to an overdraft exceeding $1,000.  The Court compelled arbitration, and the arbitrator rejected Vassos's claims entirely.  Vassos has petitioned to vacate or modify the arbitration award.  For the reasons below, the petition is denied.

## BACKGROUND

      Vassos does not dispute the accuracy of the facts as recounted by the arbitrator, which are summarized below.  Vassos managed a construction business in New York before moving to Florida in 2016, where he started a new business of "flipping" real estate, *i.e.*, buying, renovating, and reselling properties.  Shortly after moving to Florida, Vassos and his wife opened a joint bank account with Chase.

      The account was governed by Chase's standard Demand Account Agreement ("DAA").  Under the DAA, Chase "pay[s] overdrafts at [its] discretion."  The DAA instructed Vassos that he "must immediately pay the amount of any overdraft along with any fees that apply," or else Chase "may report [him] to consumer reporting agencies, close your account, or both."  The

DAA further advised that Chase "may advise consumer reporting agencies of accounts closed for misuse, such as overdrafts," and that overdrafts "could affect [Vassos's] ability to open accounts with [Chase] or other banks in the future."

Vassos apparently maintained the account without issue for the following seven years. But in 2023, Chase investigated what it termed "unexpected activity" on Vassos's account.[1] On March 9, 2023, Chase sent a notice to Vassos that it "decided to close [his Chase] accounts," and that Vassos should cancel any automatic deposits and withdrawals, open an account with a new bank, and transfer the funds from the Chase account to the new bank by April 7, 2023. Shortly afterward, Vassos opened a new joint checking account with another bank.

On April 1, 2023, a Saturday, Vassos's wife made a mortgage payment by phone, which would debit Vassos's Chase account for $1,466.03. On April 4, 2023, Vassos went to a Chase branch in person and made two withdrawals: one for $700.00 to pay an employee, and one for $9,700.00, ostensibly to empty the account. When Vassos left, the Chase account had a balance of $307.12.[2] On April 5, 2023, the mortgage payment that Vassos's wife had made over the weekend was processed by Chase. Chase remitted the amount for the mortgage, resulting in an overdraft and leaving the account with a negative balance of $1192.88.

On the same day as the overdraft, Chase sent a notice to Vassos that his "account balance . . . wasn't enough to cover the [mortgage] transaction[ for $1,466.03], so [Chase] either paid or returned them on [his] behalf." A Chase representative testified that Chase opted to pay the

---

[1] It is unclear what this "unexpected activity" was, but Vassos does not dispute it, and it is otherwise immaterial because what matters is the series of events that followed.

[2] The records show an overdraft of $392.88 when Vassos withdrew this money, but $700 was later credited to the account because the $700 Vassos withdrew to pay his employee was inadvertently debited twice by Chase. So, as far as Vassos knew at the time (and which was really the case), he withdrew all but $307.12.

overdraft so Vassos would not default on his mortgage, with the expectation that Vassos would repay the overdraft. Vassos does not dispute having received this notice.

The overdraft appeared in Vassos's next two account statements, which he received in late April and late May, respectively. Sometime later, Vassos returned in person to a Chase branch to address the negative balance of $1192.88 because neither he nor his wife had written a check for that amount. A Chase representative explained the situation concerning the mortgage payment, and that Chase had the power to pay an overdraft or return it for insufficient funds, and that Chase had chosen to pay it in this particular case. Despite the explanation, Vassos did not pay the overdraft balance. Chase later sent another account statement to Vassos, this time expressly stating: "Please Reimburse Bank."

After the overdraft went unpaid for 60 days, Chase "charged off" the balance, reflecting an assumption that Vassos would not pay the amount. Chase also documented the overdraft in the database operated by Early Warning Services, LLC ("EWS"), a consumer reporting agency that documents instances of non-payment by account holders. Banks that subscribe to EWS use these reports to help manage risk when opening accounts for new clients.

Chase originally labeled Vassos's overdraft as "account abuse" in EWS, but later changed it to "checking account fraud." A Chase representative testified that doing so was standard practice in all cases, such as this one, where an overdraft exceeding $1,000 went unpaid for more than 60 days by an account holder above the age of 18, when there was a previous restriction placed on the account.

A month or so later, Vassos attempted to open a new account at Wells Fargo. However, because of the "checking account fraud" report in EWS, Wells Fargo declined to do so. According to Vassos, he was told by a Wells Fargo representative that this "effectively precluded

3

him from opening a bank account with any financial institution in the United States."  The same day, he finally paid the overdue balance of his Chase account.

Even after paying his debt, Vassos had trouble obtaining loans or opening accounts, which Vassos attributes to Chase labeling him a fraudster.  He was also removed from his position as president of his condominium board and endured awkward encounters with residents who learned about this debacle and assumed that he did something criminal.

Vassos made multiple complaints to Chase about its report of "fraud."  Chase conducted an internal investigation and, although several Chase "employees questioned the necessity of the fraud label," the "most senior representative from [the] executive office ultimately affirmed [it] under [Chase] criteria."  Chase's final administrative rationale stated:

> The proof is he was notified [that] his account was closing and then he overdrew his account by over $1K.  This demonstrates intent.  He took money out at the branch and paid his monthly mortgage and then he didn't pay it back for months (likely when he wasn't able to open accounts elsewhere).  Had it been an error he had 60 days to correct it before it was charged off.

A Chase representative testified that Vasso's subsequent repayment of the overdraft would not justify removing the EWS entry, but said Chase edited it to reflect that the overdraft was eventually repaid.  The representative further testified that the designation would not be removed because the point of the posting was to make an accurate representation of the history of the account, which was pertinent to risk assessment by other financial institutions, and that such risk was not completely ameliorated by the late repayment.

Vassos then filed suit in New York state court for defamation, breach of contract, breach of the implied covenant of good faith and fair dealing, *prima facie* tort, and sought a permanent injunction.  Chase removed the case here and the Court granted Chase's motion to compel

4

arbitration pursuant to the DAA.  The arbitrator rejected Vassos's claims entirely, and Vassos has petitioned to vacate the arbitrator's award.

## DISCUSSION

### I.    Legal Standard

"A court reviewing an arbitration award under the FAA 'can confirm and/or vacate the award, either in whole or in part.'"  Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012) (quoting D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).  "A petition for vacatur, like the one before the Court, is 'not an occasion for *de novo* review of an arbitral award.'"  R.W. Chelsea Energie Ltd. v. Vision Indian Ocean (V.I.O.) SA, 815 F. Supp. 3d 264, 270 (S.D.N.Y. 2025) (quoting Scandinavian Reinsurance, 668 F.3d at 71-72."  Rather, "an award is presumed valid unless proved otherwise" because "the FAA establishes a strong presumption in favor of enforcing an arbitration award." Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co., 57 F.4th 372, 382 (2d Cir. 2023).

There are four statutory grounds for vacatur.  See 9 U.S.C. § 10(a)(1)-(4).  "[A]n arbitration award may also be vacated" under the Second Circuit's "doctrine of manifest disregard of the law."  See In re Arb. Between Interdigital Commc'ns Corp. & Samsung Elecs. Co., 528 F. Supp. 2d 340, 354 (S.D.N.Y. 2007).[3]  Here, Vassos invokes statutory and doctrinal grounds for vacatur.

---

[3] The Second Circuit's "manifest disregard" standard was seemingly abrogated by Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 585 (2008), in which the Supreme Court held that the statutory grounds for vacatur and modification of an arbitral award were "exclusive."  Nonetheless, the Second Circuit later held that the "manifest disregard" standard survived Hall Street, which it described as merely "'reconceptualiz[ing]' manifest disregard 'as a judicial gloss on the specific grounds for vacatur' of arbitration awards under 9 U.S.C. § 10." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329 (2d Cir. 2010) (quotations omitted).  The Supreme Court avoided deciding "whether 'manifest disregard' survives [the] decision in Hall Street . . . as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10." Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 672 n.3 (2010).  And the Second Circuit has even recently stated that the "manifest disregard [standard] remains a valid ground for vacating arbitration awards." Barron v. Shapiro, No. 25-77, 2026 WL 251659, at *3 (2d Cir. Jan. 30, 2026) (quoting Seneca Nation of Indians v. New York, 988 F.3d 618, 625 (2d Cir. 2021)).  Accordingly, the Court proceeds to consider petitioner's "manifest disregard" argument.

## A.      9 U.S.C. § 10(a)(4)

A court may vacate an arbitration award "where the arbitrator[] exceeded [his] powers, or so imperfectly executed them."  9 U.S.C. § 10(a)(4).  "A party seeking relief under that provision bears a heavy burden."  Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 (2013); see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010) ("It is not enough . . . to show that the [arbitrator] committed an error – or even a serious error.").

The Second Circuit has "consistently accorded the narrowest of readings" to this authorization.  Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 220 (2d Cir. 2002).  The "analysis under Section 10(a)(4) therefore 'focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[] correctly decided that issue.'"  Beijing Shougang Mining Inv. Co. v. Mongolia, 11 F.4th 144, 161 (2d Cir. 2021) (quotations omitted).

Vassos contends the arbitrator exceeded his authority by "stray[ing] from interpretation and application of the agreement and effectively 'dispense[d] his own brand of industrial justice."  Stolt-Nielsen, 559 U.S. at 671 (quoting M.L.B. Players Assn. v. Garvey, 532 U.S. 504, 509 (2001)).  Vassos says this is the case because the DAA did not "permit" Chase to label him a fraudster to every bank in the United States, and the arbitrator effectively gave Chase the right to do so.  The Court disagrees.

The arbitrator interpreted and applied the DAA as written.  Specifically, the arbitrator examined the DAA and found that it authorized Chase to report delinquent account holders to consumer reporting agencies, such as EWS.  Although the arbitrator noted that "the DAA does not explicitly refer to the use of the fraud label," the arbitrator interpreted that provision in favor of Chase because it "contemplates a report by [Chase] to consumer reporting agencies and does

6

not purport to limit the specific terminology of such reports."  These findings reflect the

arbitrator's textual interpretation of the DAA, not a "dispens[ing of] his own brand of industrial

justice."  Stolt-Nielsen, 559 U.S. at 671.  Accordingly, the Court denies Vassos's petition to

vacate the arbitrator's award under 9 U.S.C. § 10(a)(4).

### B.       Manifest Disregard of the Law

"[A]wards are vacated on grounds of manifest disregard only in those exceedingly rare

instances where some egregious impropriety on the part of the arbitrator is apparent."  Smarter

Tools, 57 F.4th at 383 (quotations omitted).  The Court may vacate an arbitral award for manifest

disregard of the law "only where . . . (1) the arbitrators knew of a governing legal principle yet

refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-

defined, explicit, and clearly applicable to the case."  Porzig v. Dresdner, Kleinwort, Benson, N.

Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007).

"An award should be enforced, 'despite a court's disagreement with it on the merits, if

there is a *barely colorable justification* for the outcome reached."  Smarter Tools, 57 F.4th at 383

(quoting T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329 (2d Cir. 2010)).

Such a justification exists so long as the arbitrator "could have justifiably rested their decision"

on their reasoning.  Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103

F.3d 9, 13-14 (2d Cir. 1997).

Here, Vassos does not identify any portion of the arbitrator's decision that both

recognizes and flouts any governing law.[4]  Vassos simply asserts, in conclusory fashion, that

"Chase breached its own contract . . . by reporting that Vassos had committed checking account

---

[4]  Vassos, citing New York cases and the Uniform Commercial Code, asserts that "an overdraft is not fraud" but rather "merely creates a loan that is payable by the depositor."  Both sources of authority are irrelevant to Vassos's claims, which arise (and which the arbitrator analyzed) under Florida law.

fraud," and that the arbitrator having "chalked this up to mere 'terminology' shows a manifest disregard of the law." [5]

As discussed above, the contract by its own terms contemplated that Chase "may advise consumer reporting agencies of accounts closed for misuse, such as overdrafts."  Chasing having advised EWS of Vassos's account, which Chase closed for "account abuse," later relabeled "checking account fraud," falls squarely within that provision.  This far surpasses the "barely colorable justification" standard for the arbitrator's reasoning.  Smarter Tools, 57 F.4th at 383. Accordingly, the Court denies Vassos's petition to vacate the arbitrator's award for manifest disregard of the law.

### CONCLUSION

The petition to vacate the arbitrator's award is denied.

**SO ORDERED.**

_Brian M. Cogan_
U.S.D.J.

Dated: Brooklyn, New York
      July 20, 2026

---

[5] Vassos further complains that the arbitrator "rejected Vassos's testimony that he did not comprehend that an overdraft had been created [and that] he thought it was a mistake by [Chase]."  But what Vassos "understood" is irrelevant to whether Chase's actions breached the contract.  In any event, the arbitrator rejected his testimony on solid grounds.  Vassos had a long career of business ownership, which the arbitrator found made Vassos "no novice victimized by an inability to read bank statements and other bank notices, or by a failure to understand his contractual rights and obligations."